■ MICHAEL C. SINGER, Appellant, v JEFFERIES & COMPANY, INC., et al., Respondents.—Order, Supreme Court, New York County (Myriam J. Altman, J.), entered March 20, 1989, which, *inter alia,* granted defendants' motion to the extent of staying the action and compelling arbitration of plaintiff's claims, unanimously reversed, on the law, and the matter remanded for further proceedings consistent with this memorandum decision, without costs.

The underlying facts giving rise to the action which is the subject of this appeal were discussed at length in our recent memorandum in a related case. *(Singer v Jefferies & Co.,* 160 AD2d 216 [1st Dept 1990].)* On that appeal we affirmed an order of the IAS court, dated July 11, 1988, holding that plaintiff, Michael C. Singer, who had been employed by defendants as a senior vice-president and manager of the corporate finance department of Jefferies & Company, Inc., the corporate defendant, adequately stated a cause of action alleging tortious conduct by both the corporate defendant and the individual defendant, Boyd Jefferies, who had been the chief executive officer of the corporate defendant; that the action was timely and not barred by any arguably applicable Statute of Limitations; and that the issue of proximate cause was a question of fact for a jury to resolve.

Defendants, having failed in their attempt to have the action dismissed outright, brought a subsequent motion seeking, *inter alia,* to have plaintiff's action stayed and to compel arbitration of plaintiff's claims. This the IAS court granted, deeming the claim to have arisen from acts committed in the scope of plaintiff's employment. For the reason stated below, we disagree, and accordingly, reverse.

The dispositive issue herein is, as framed by the Court of

Appeals, speaking through Judge Meyer, "whether the dispute between plaintiff[s] and defendant[s] arose out of defendant's business." *(Flanagan v Prudential-Bache Sec.,* 67 NY2d 500, 509 [1986].) At the time he was hired, Singer executed a uniform application for securities industry registration (U-4), which contained the following clause: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register". Pursuant to U-4, Singer was also registered with the National Association of Securities Dealers (NASD) and, accordingly, obligated to arbitrate disputes arising out of his employment under NASD rules.

It is, however, Singer's contention that the specific dispute which is the subject of this action, i.e., that Boyd Jefferies duped him into preparing and sending an indisputably false invoice in the furtherance of a criminal scheme between Boyd Jefferies and Ivan Boesky and their respective companies, was outside the arbitration agreement because it arose out of illegal activity and not out of the lawful business of Jefferies & Company within the meaning of section 1 of the NASD Code of Arbitration Procedure.\* The IAS court *sub silentio* rejected this claim, although it did not specifically address the question. We, however, are of the view that under the circumstances of this case, defendants are not entitled to have arbitration compelled and, further, that Singer is entitled to have his case decided by a jury.

The acts complained of certainly took place during Singer's tenure at Jefferies & Company. However, the temporal posture of a dispute is not necessarily dispositive as to whether arbitration is required. *(See, Fleck v Hutton Group,* 891 F2d 1047, 1051-1052 [2d Cir 1989], *overruling Coudert v Paine Webber Jackson & Curtis,* 705 F2d 78 [2d Cir 1983]; *see also, Morgan v Smith Barney, Harris Upham & Co.,* 729 F2d 1163, 1167 [1984]; *Flanagan v Prudential-Bache Sec.,* 67 NY2d, *supra,* at 507.) While the cited cases concerned posttermination disputes, the rationale employed, i.e., that the court should consider, in determining whether arbitration is proscribed or prescribed, whether the claims involve "significant

---

\* Section 1 of part I of the NASD Code of Arbitration Procedure provides that "any dispute, claim or controversy arising out of or in connection with the business of any member of the Association \* \* \* (2) between or among members and public customers, or others" is a matter "eligible" for NASD arbitration. (NASD Manual [CCH] ¶ 3701, at 3711.)

aspects of the employment relationship", is equally applicable to claims arising prior to termination, but not out of the employment relationship. *(Compare, Fleck v Hutton Group,* 891 F2d, *supra,* at 1052 ["(a)n unprovoked insult * * * cannot be said to arise from employment just because the employment relationship was a 'but for' cause of the employer's dislike of the employee"]; *accord, Pearce v Hutton Group,* 828 F2d 826, 832 [DC Cir 1987] [slip and fall, for example, would not be appropriate for arbitration].)

This court notes that the business of Jefferies & Company, and of the individual defendant, was stocks, not fraud. We believe that Singer never contemplated that he would be assigned tasks by his employers which, on the surface, appeared to be within the regular course of employment, but, in fact, constituted criminal conduct. This employee was never given the opportunity to refuse to perform these tasks—with knowledge of the actual factual scenario. We accordingly refuse to hold that this most unsavory situation should be sent to arbitration by our deeming it to have arisen out of or in connection with his employment, as contemplated by the U-4. *(Cf., Pearce v Hutton Group,* 828 F2d, *supra,* at 832 [dispute concerned allegations regarding whether *plaintiff* had engaged in fraud in connection with his performance as a branch manager]; *see also, Mendelsohn v A & D Catering Corp.,* 100 AD2d 209, 215 [2d Dept 1984].)

At oral argument, counsel for Jefferies & Company theorized that Singer's claims arose out of and in connection with his employment because he dictated the invoice at the company and used the company secretarial and messenger services, after having received the direction to prepare the false invoice from his superior, Boyd Jefferies. While we are impressed with the creativity of this argument, it is nevertheless unavailing. We refuse to adopt the view that becoming an unwitting partner to fraud in one of the most notorious scandals of the past decade arose out of and in connection with Singer's employment. The totality of the act, not the specific activities which comprised the act, and the dire consequences stemming therefrom point only to the conclusion that Singer should be permitted to have his day in court.

Having determined that the dispute cannot properly be held to be either within the arbitration agreement or subject to arbitration under NASD rules, we need not reach the question of whether defendants waived any rights they may have had to stay the action and to compel arbitration. The courts are, as Singer asserts, the appropriate forum for resolution of this

dispute, and the dispute should, accordingly, proceed to trial. Concur—Kupferman, J. P., Carro, Rosenberger, Ellerin and Rubin, JJ.